IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| DELISA M. WARE,<br><br>  Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>  Defendant. | No. 17-CV-0088-LTS<br><br>**REPORT AND<br>RECOMMENDATION** |

Plaintiff, Delisa M. Ware ("claimant"), seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits and supplemental security income under the Social Security Act. She contends that the Administrative Law Judge (ALJ) who heard her claim erred in determining that she was not disabled. For the reasons that follow, I recommend that the District Court **reverse** the Commissioner's decision and remand the case for further proceedings.

## I.  BACKGROUND

I adopt the facts set forth in the parties' Joint Statement of Facts and therefore only summarize the pertinent facts here. (Doc. 13). Claimant was born in May 1970, making her forty-three years old when she allegedly became disabled and forty-six years old at the time of the ALJ's decision. (AR 28, 30).[1] Claimant graduated from high school and earned an associate's degree. (*Id.*). Her past relevant work included fast food manager and production worker. (*Id.*).

---

[1] "AR" refers to the administrative record below.

On March 11, 2014, claimant filed an application for disability insurance benefits. (AR 22; Doc. 13, at 1). She alleged a disability onset date of December 18, 2013. (*Id.*). The Social Security Administration denied the instant claim initially and on reconsideration. (AR 144-54, 157-69). On April 20, 2016, Administrative Law Judge Eric S. Basse held a hearing on the matter. (AR 36-70). Claimant offered testimony and was represented by counsel. (*Id.*). Testimony was also heard from Julie Svec, a vocational expert. (AR 62-68). On June 1, 2016, the ALJ issued a decision denying the claim. (AR 22-30). On May 23, 2017, the Appeals Council denied review. (AR 1-5). The ALJ's decision therefore became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On August 2, 2017, claimant timely filed the instant complaint in this Court. (Doc. 3). By January 22, 2018, the parties had filed their briefs. (Docs. 14-16). On January 23, 2018, the Court deemed the case fully submitted and ready for decision. The Honorable Leonard T. Strand, Chief United States District Judge, referred this case to me for a Report and Recommendation.

## II.     *DISABILITY DETERMINATIONS AND BURDEN OF PROOF*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to

get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. (*Id.* § 404.1572). "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit. (*Id.*).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. *Id.* § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. 404.1521 (2015).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the

regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do his past relevant work, then he is considered not disabled. (*Id.*). Past relevant work is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. (*Id.* § 416.960(b)). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite . . . her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted). The RFC is based on all relevant evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591. If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of fairly and fully developing the record before making a determination

about the existence of a disability. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III.  THE ALJ'S FINDINGS

The ALJ made the following findings at each step with regard to claimant's disability status:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity during the period from her alleged onset date through her date last insured. (AR 24).

At Step Two, the ALJ found that claimant suffered from the following severe impairments: "cervical degenerative disc disease, status-post fusion; mild lumbar degenerative disc disease; fibromyalgia syndrome; schizophrenia; status-post right shoulder rotator cuff tear; a history of drug abuse; and asthma by report." (AR 25). The ALJ also noted that other impairments were mentioned in the record (including osteoarthritis of the right knee, and abdominal pain and constipation), but found these were non-severe in nature. (*Id.*).

At Step Three, the ALJ found that none of claimant's impairments met or equaled a presumptively disabling impairment listed in the regulations. (AR 25-26).

At Step Four, the ALJ found that claimant retained the RFC required to perform light work, subject to the following additional restrictions:

> [Claimant] can only occasionally climb, balance, stoop, kneel, crouch and crawl; can occasionally lift overhead bilaterally; should avoid concentrated exposure to extreme heat and cold; and should avoid concentrated exposure to pulmonary irritants. She can perform simple repetitive tasks and understand short simple instructions. She can perform work not involving the public and should avoid large crowds. She can perform work involving occasional contact with coworkers and supervisors, and not involving a production rate pace.

(AR 26). Based on this RFC determination, the ALJ determined that claimant was unable to perform her past relevant work. (AR 28).

At Step Five, the ALJ found that, despite claimant's RFC, there were jobs that existed in significant numbers in the national economy claimant could still perform, including pricer, folder, and sorter. (AR 29). Therefore, the ALJ concluded that claimant was not under a disability at any time between her alleged onset date and her date last insured. (AR 30).

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence . . . [that] allows for the possibility of drawing two inconsistent conclusions[;] thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court "consider[s] all of the evidence that was before the ALJ, but . . . do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence

appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Claimant argues that the ALJ erred in a number of respects. First, she argues the ALJ erred in finding that her knee osteoarthritis was non-severe. (Doc. 14, at 4-6). Second, claimant argues the ALJ's decision was not supported by substantial evidence because the ALJ "failed to notice Dr. Cromer's opinions" concerning claimant's RFC "for the period from April 1, 2014, to the present." (Doc. 14, at 6-8). Third, claimant

argues the ALJ erred by "failing to provide good reasons for assigning little weight to Dr. Farrell's opinions," which claimant argues should have been given controlling weight. (Doc. 14, at 8-15). Finally, claimant argues that the ALJ's findings at Step Five were erroneous because the ALJ allegedly "failed to resolve the possible conflict between [the ALJ's] overhead lifting RFC limitation and the lifting requirements of the other work identified by the vocational expert." (Doc. 14, at 15-17). I will address each of these issues in turn.

### A.   *Claimant's Knee Osteoarthritis*

Claimant argues that the ALJ erred in finding that her knee osteoarthritis was a non-severe impairment. Claimant argues that her "right knee issues were increasing during the relevant period" and that her "primary care physician, Dr. Angela Farrell, M.D., opined [that claimant's] 'bilateral knee osteoarthritis' was limiting [claimant's] ability to walk and/or stand to less than two hours in an 8-hour day" and that, at times, claimant "needed an assistive device for standing or walking." (Doc. 14, at 4-5). Further, claimant argues that the ALJ failed to adequately consider the opinion of Dr. Gary Cromer, M.D., a nonexamining medical consultant, in not recognizing Dr. Cromer's opinion that claimant had not been able to perform the standing or walking requirements of light work since April 1, 2014. (Doc. 14, at 5-6).

It is the claimant's burden to establish that his or her impairment or combination of impairments is severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). For an impairment to be found severe, it must significantly limit the claimant's ability to perform basic work activities. *See* 20 CFR § 404.1521(a). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." *Kirby*, 500 F.3d at 708 (internal citation omitted). When a claimant has multiple impairments, "the Social Security Act requires the Commissioner to consider the combined effect of all impairments without regard to whether any such impairment, if considered separately,

8

would be of sufficient medical severity to be disabling." *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

In determining the severity of a medically determinable impairment, the ALJ must consider a claimant's symptom-related limitations and make a credibility finding on his or her alleged limitations. *See Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001) (holding that the ALJ erred at Step Two by failing to fully evaluate the claimant's subjective complaints); *see also* SSR 16-2P, 2016 WL 1119029 (Mar. 16, 2016) (effective Mar. 28, 2016 (SSR 16-3P, 2016 WL 1237954)), at *7-8. Although an ALJ may conclude that the medical evidence does not support a claimant's subjective allegations, this is only one factor that should be considered. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) ("The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints."). If an ALJ discredits a claimant's subjective allegations, he must do so explicitly, and provide reasons for discrediting the claimant. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) ("An ALJ who rejects such subjective complaints must make an express credibility determination explaining the reasons for discrediting the complaints" (citation and internal quotation marks omitted)).

In this case, the ALJ found claimant had been diagnosed with osteoarthritis of the right knee. (AR 25). A diagnosis of that condition, however, does not itself establish that the condition significantly limited claimant's ability to perform basic work activities. "A diagnosis alone is an insufficient basis for a finding that an impairment is severe." *Wilber v. Astrue*, 09–CV–04235-NKL, 2010 WL 2772313, at *9 (W.D. Mo. July 12, 2010). *See also Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011) (finding that, although the claimant was diagnosed with depression and anxiety, the diagnoses did not by themselves mean the conditions were severe). The ALJ found that despite the

diagnosis, claimant's gait, station, and balance were routinely found to be normal. (AR 25, 760, 769, 787, 789, 791, 794, 797, 800, 809). The medical records reflect that claimant consistently had full strength in her legs. (AR 477, 493, 503, 784). They also reflect normal range of motion in claimant's right knee. (AR 471, 761, 765, 769, 771, 777). Moreover, the records reflect that treatment by means of injections were effective in decreasing, but not eliminating, claimant's pain in her right knee. (AR 760-61, 765, 768, 772, 777, 779, 781). Impairments that are improved through treatment so as to allow performance of normal work activities are not severe. *Phillips v. Colvin*, 721 F.3d 623, 631-32 (8th Cir. 2013).

The ALJ also found claimant's activities were inconsistent with a finding that her right knee osteoarthritis was severe in the sense that it would significantly limited claimant's ability to perform basic work activities. Claimant was able to dust, vacuum, wash dishes, perform light housework, prepare meals, and shop. (AR 27, 302-303). She also took care of pets and a grandson, visited family "almost daily," and attended church. (AR 27, 269, 301, 304, 400, 731).

In August 2014, Dr. Cromer opined that claimant could perform light work from December 2013 to March 2014, but that she was reduced to sedentary work from April 2014 onward because of her "ongoing right knee symptoms." (AR 109-115). In August 2015 and March 2016, claimant's treating physician, Dr. Angela Farrell, opined that claimant could only stand and/or walk fewer than two hours per day. (AR 533, 803). These opinion support Dr. Cromer's opinion that claimant's right knee symptoms limited claimant to sedentary work. Thus, there is medical evidence that would support a finding that claimant's right knee osteoarthritis impairment was severe because it significantly limited her ability to perform basic work activities.

The Commissioner argues that the ALJ considered treatment records that post-dated Dr. Cromer's opinion and that these records showed claimant had full strength,

10

and normal range, gait, stance and balance in her lower extremities. The Commissioner further argues that the ALJ therefore had good reason to afford Dr. Farrell's opinions little weight. As will be noted, I disagree that the ALJ gave adequate reasons for affording Dr. Farrell's opinions little weight.

The fact that the medical records could support a different conclusion regarding the severity of claimant's osteoarthritis does not necessarily mean that the ALJ erred. Substantial evidence in the record as a whole may still support the ALJ's conclusion. Nevertheless, because I believe remand is appropriate regarding the ALJ's inadequate explanation for the reasons he afforded Dr. Farrell's opinions little weight, and given that Dr. Farrell's opinions are relevant to this issue as well, I find that on remand the ALJ should further address whether he affords Dr. Farrell's opinions more weight, and, if so, whether the greater weight afforded impacts the ALJ's conclusion that claimant's osteoarthritis is non-severe.

### B. Dr. Cromer's Opinions

Claimant next argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to notice Dr. Cromer's opinions concerning claimant's RFC for the period from April 1, 2014, to the present. (Doc. 14, at 6-8). Claimant points out that on August 6, 2014, Dr. Cromer opined that from the period of April 1, 2014, to the present, claimant had limitations that included standing and/or walking for a total of two hours during an eight-hour day, and occasional overhead reaching. (Doc. 14, at 7). Claimant argues the ALJ erred in not including these limitations in claimant's RFC. (*Id.*).

To be clear, because Dr. Cromer wrote the report on August 6, 2014, the time period in question is a four-month period from April 1, 2014, to August 6, 2014. Further, the ALJ did include in claimant's RFC that she "can occasionally lift overhead bilaterally." (AR 26). Thus confined by these parameters, claimant's argument is that

the ALJ should have included the standing/walking limitation Dr. Cromer opined was appropriate during the four-month period included in his examination.

First, claimant's assertion that the ALJ "failed to notice" this portion of Dr. Cromer's opinion is not supported by the record. (Doc. 14, at 6). The Court should presume an ALJ properly discharged his duties unless there is clear evidence to the contrary. *See Wilburn v. Astrue*, 626 F.3d 999, 1003–04. (8th Cir. 2010) (noting that the Court should presume that an ALJ carried out his official duties absent clear evidence to the contrary). Indeed, the ALJ noted that he considered "the entire record" and "all the evidence." (AR 23, 26). Although not dispositive, this does support a presumption that the ALJ did, in fact, properly discharge his duties. Further, although the ALJ's decision does not reference Dr. Cromer by name, it twice references his report. (AR 25, 28). An ALJ must consider all of the evidence, but is not required to discuss every piece of evidence. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010).

Second, even if the ALJ failed to consider this portion of Dr. Cromer's report, the Court should not reverse the ALJ's decision if it was harmless error. An error is harmless if it would not change the outcome of the ALJ's decision. *See Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014) (holding that ALJ's failure to explicitly consider an applicable Social Security Ruling "had no practical effect on the decision and therefore [was] not a sufficient reason to set aside the ALJ's decision"); *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To show an error was not harmless, [claimant] must provide some indication that the ALJ would have decided differently if the error had not occurred."). It is claimant's burden to show that the error was not harmless. *Id*.

Claimant argues the error was not harmless because the ALJ did not include the limitation in the hypothetical question posed to the vocational expert. (Doc. 14, at 7-8). A hypothetical question must include limitations found credible by the ALJ and supported by the medical record. *See, e.g.*, *Howe v. Astrue*, 499 F.3d 835, 841–42 (8th Cir. 2007);

*Pertuis v. Apfel*, 152 F.3d 1006, 1007 (8th Cir. 1998). In order to assess whether the error was harmless, however, the analysis must begin with determining whether substantial evidence supports the ALJ's RFC without the additional limitation.

In conducting that analysis, I find remand appropriate because the ALJ's failure to give an adequate explanation for giving little weight to Dr. Farrell's opinions (as explained below) calls into question whether substantial evidence supports the ALJ's exclusion of the standing/walking limitation. If Dr. Farrell's opinions are deserving of more weight and that determination affects the limitations, then the error was not harmless because that limitation was not included in the hypothetical question posed to the vocational expert.

### C. *Dr. Farrell's Opinions*

Claimant argues that the ALJ erred in failing to provide "good reasons for assigning little weight" to the opinions of Dr. Farrell, claimant's primary care physician. (Doc. 14, at 10-12). Claimant further argues that the ALJ should have afforded Dr. Farrell's opinions controlling weight. (Doc. 14, at 12-15).

In a Medical Source Statement dated March 3, 2016, Dr. Farrell provided a number of opinions regarding claimant's functional limitations. Dr. Farrell opined that claimant could stand and/or walk fewer than two hours in an eight-hour workday because of "lumbar disc degeneration and spondylosis L2-L5, bulging discs L1-L5 . . . [and] bilateral knee arthritis." (AR 803-04). Dr. Farrell opined that, "at times," claimant needed an assistive device to help her ambulate. (AR 804). Dr. Farrell opined that claimant should never reach overhead with her right hand. (AR 805). Dr. Farrell explained claimant's "shoulder injury, degenerative disc disease, osteoarthritis[,] along w/ fibromyalgia cause[s] significant functional limitation." (*Id.*).

In this case, the ALJ found that Dr. Farrell's opinion "that the claimant could not work an eight-hour workday" because of physical impairments was "entitled to little

13

weight because it is inconsistent with the weight of the objective medical findings, as noted above in discussion of Exhibits 19F and 20F, and others." (AR 28). Exhibit 19F is the treatment records from the University of Iowa Hospitals and Clinics (where Dr. Farrell worked) for the period of February 4, 2013, to February 5, 2016. (AR 696-758). Exhibit 20F is the treatment records from Pain Associates from July 3, 2014, to February 26, 2016. (AR 759-802).

In his written decision, the ALJ discussed Exhibits 19F and 20F with regard to two issues. First, the ALJ cited Exhibit 19F in concluding that claimant's abdominal pain and constipation were not severe impairments. (AR 25). Claimant is not arguing the ALJ erred in that conclusion, so the ALJ's reference to Exhibit 19F is irrelevant as to the standing/walking limitation. The ALJ cited Exhibit 20F in discussing his conclusion that claimant's right knee osteoarthritis was not a severe impairment and to show that that claimant had a normal gait, station, and balance. (*Id.*).

The ALJ again discussed Exhibits 19F and 20F in concluding that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 27). In referencing Exhibit 19F, the ALJ noted that claimant "underwent arthroscopy and rotator cuff debridement with distal clavical excision in November 2015. . . . However, her most recent examination by a physician recorded no abnormal findings of her neck, lungs, back, or shoulder." (*Id.*). Again, the citation to Exhibit 19F is irrelevant to the issue of whether the medical records are inconsistent with Dr. Farrell's standing/walking limitation. The ALJ cited Exhibit 20F for the proposition that "[i]n February 2015, examination found a normal gait, station and balance." (*Id.*).

"A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" *Halverson*

14

*v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (alteration in original) (internal quotation marks omitted) (quoting *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009)); 20 C.F.R. § 404.1527(d)(2). "When a treating source's opinion is not controlling, it is weighed by the same factors as any other medical opinion: the examining relationship, the treatment relationship, supporting explanations, consistency, specialization, and other factors." *Lehnartz v. Barnhart*, 142 Fed. App'x 939, 940 (8th Cir. 2005). An ALJ must "give good reasons" for the weight afforded to the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2). *See also Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) ("Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation.").

I find the ALJ's explanation for discounting the weight given to Dr. Farrell's opinion regarding claimant's standing/walking limitation is inadequate. The ALJ's references to Exhibit 19F are wholly irrelevant to the issue. The ALJ's references to Exhibit 20F are, at most, clues as to what the ALJ found inconsistent between then and Dr. Farrell's opinion. The ALJ does not explain how he found inconsistencies between claimant's normal gait, station, and balance and Dr. Farrell's opinion regarding how long claimant could stand and walk in an eight-hour workday. The ALJ fails to cite any medical records or opinions that demonstrates that these are inconsistent. It is not sufficient for the ALJ to simply pronounce they are inconsistent; to do so creates the appearance of the ALJ "playing doctor." *Pate–Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009).

The ALJ found claimant has the severe impairments of cervical degenerative disc disease, mild lumbar degenerative disease, and fibromyalgia. (AR 25). With these impairments come pain, as reflected in Dr. Farrell's medical treatment records. The ALJ has failed to explain how claimant's normal gait, station and balance means that she does

15

not suffer such pain from these conditions that it would prevent her from standing or walking for more than two hours in a day.

Finally, the ALJ's reference to "other" exhibits in discounting the weight he afforded to Dr. Farrell's opinion is of no assistance. (AR 28). The ALJ provided no reference to any specific medical records, nor any indication of what he believed those records showed and how they were inconsistent with Dr. Farrell's opinion. On review, the Court cannot evaluate the soundness of the ALJ's conclusions based on unidentified "other" exhibits and when the ALJ fails to explain how those other unidentified records are inconsistent with a treating physician's opinion.

Therefore, I respectfully recommend the Court reverse the ALJ's decision and remand this case to require the ALJ to provide a full explanation of why he afforded the opinion of claimant's treating physician little weight regarding the standing/walking limitation.

### D. *The Overhead Lifting Limitations*

Finally, claimant argues that the ALJ erred at Step Five when he failed to inquire into a possible conflict between the Dictionary of Occupational Titles (DOT) and the Selected Characteristics of Occupations (SCO) as it related to restrictions on overhead lifting. (Doc. 14, at 15-17). The ALJ found claimant's RFC included her ability to perform light work with occasional lifting overhead bilaterally. (AR 26). The vocational expert found claimant could perform the jobs of pricer, folder, or sorter, but claimant argues that these jobs require an ability to "lift at all levels, including overhead, 10 pounds frequently." (Doc. 14, at 16). Claimant argues the ALJ should have inquired into the apparent conflict between that requirement and the ALJ's restriction on overhead lifting. (*Id.*).

In *Kemp ex. Rel. Kemp v. Colvin*, 743 F.3d 630 (8th Cir. 2014), the Eighth Circuit Court of Appeals stated that an "ALJ has an affirmative responsibility to ask about 'any

possible conflict' between VE evidence and the DOT, and its companion publication (the SCO), on the requirements of a job or occupation before relying on VE evidence to support a determination of not disabled." 743 F.3d at 633 (quoting Social Security Ruling 00—4p, 2000 WL 1898704, at *2-4 (Dec. 4, 2000)). In *Kemp*, as here, "the record does not reflect whether the VE or the ALJ even recognized the possible conflict between the hypothetical describing a claimant who could reach overhead only occasionally," and the descriptions of the jobs the vocational expert concluded claimant could perform. *Id*.

The Commissioner argues, however, that there is no conflict. The Commissioner argues that each of the jobs (pricer, folder, and sorter) require lifting of up to 10 pounds, but the DOT description of the jobs do not indicate a need for lifting the 10 pounds over the head or more than occasional overhead reaching. (Doc. 15, at 16-17). My review of the DOT descriptions (pricer, 1991 WL 672104; folder, 1991 WL 673072; and sorter, 1991 WL 672104) supports the Commissioner's argument. Although claimant argues that these jobs require an ability to "lift at all levels, including overhead, 10 pounds frequently," (Doc. 14, at 16), she provides no citation to support the assertion.

This case is distinguishable from *Kemp*. In *Kemp*, the DOT description did reveal an apparent conflict regarding the degree of reaching involved in that job. Here, there is no conflict apparent on examination of the DOT descriptions. This case is also distinguishable from *Thomas v. Berryhill*, No. 16-4559, 2018 WL 704215 (8th Cir. Feb. 5, 2018). In *Thomas*, the court found that "the expert testified that the hypothetical individual was qualified to handle a job that the DOT classifies as two reasoning levels higher than the limitations in her RFC." *Thomas*, 2018 WL 704215, at *3. Here, again, the DOT descriptions do not, on their face, indicate that claimant would be required to lift more than 10 pounds over her head frequently, as claimant argues.

The Commissioner further points out that the DOT descriptions are not definitive because jobs may be performed in different ways. *Wheeler v. Apfel*, 224 F.3d 891, 897

(8th Cir. 2000). This argument is not persuasive, however; certainly not without a vocational expert explicitly addressing this issue as a basis for resolving an apparent conflict. *Thomas*, 2018 WL 704215, at *4.

Therefore, I find that the ALJ posed a proper hypothetical question to the vocational expert, properly relied on the expert's testimony, and that there was no apparent conflict requiring an investigation between the ALJ's RFC and the jobs the vocational expert identified that claimant could perform.

## VI. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **reverse** the ALJ's decision and remand the case for further proceedings consistent with this Report and Recommendation. The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 12th day of February, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa